558 F.Supp. 1387 (1983)
CONSOLIDATED RAIL CORPORATION, Plaintiff,
v.
COUNTY OF MONROE; Nancy Shukaitas, Chairman, Monroe County Board of Commissioners, individually and in her official capacity; et al., Defendants.
Civ. A. No. 83-1.
Special Court, Regional Rail Reorganization Act.
March 31, 1983.
*1388 Jerome J. Shestack, Robert L. Kendall, Jr., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (John W. Rowe, Bruce B. Wilson, Charles E. Mechem, Consolidated Rail Corp., Philadelphia, Pa., of counsel), for plaintiff Consolidated Rail Corp.
John Heffner, Pepper & Corazzini, Washington, D.C.; Morey M. Myers, William W. Warren, Jr., Jill H. Miller, Gelb, Myers, Bishop & Warren, Scranton, Pa. (Robert H. Nothstein, Sol., Monroe County, Stroudsburg, Pa., of counsel), for defendants County of Monroe, et al.
Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.
BRYANT, Judge:
Plaintiff in this action seeks a declaratory judgment and preliminary and permanent injunctive relief. Specifically, Consolidated Rail Corporation (Conrail) requests an order declaring that the Special Court has original and exclusive jurisdiction over the claim for relief asserted in this action and enjoining defendants, County of Monroe and its Board of Commissioners (County) from taking any further action in pursuit of injunctive relief in a suit filed by them in the Middle District of Pennsylvania entitled County of Monroe, et al. v. Consolidated Rail Corporation, CV. No. 83-0167. Defendants have filed a motion to dismiss the complaint for lack of subject matter jurisdiction. We grant plaintiff's request for declaratory judgment and injunctive relief. The defendants' motion to dismiss is denied.
This action arises out of defendants' efforts to prevent Conrail from implementing a plan to dismantle segments of its tracks on the Scranton Line, between Scranton, Pennsylvania and Port Morris, New Jersey, in accordance with the abandonment procedures specified in section 308 of the Regional Rail Reorganization Act of 1973 (3 R Act) as added by § 1156 of the Northeast Rail Service Act of 1981 (NRSA), 45 U.S.C. § 748 (Subtitle E of Title XI of the Omnibus Budget Reconciliation Act of 1981, Pub.L. 97-35).[1] This legislation establishes *1389 an abandonment procedure that deviates significantly from the traditional abandonment provisions of 49 U.S.C. § 10901 et seq. Under § 308, Conrail is not required to submit an abandonment application to public protest, investigation or review under a public convenience and necessity test. Congress intended that the abbreviated abandonment procedure added to the 3 R Act by NRSA would permit Conrail to expeditiously dispose of obsolete or unprofitable lines in favor of service on the railroad lines with the best opportunity for growth and profitability. This would facilitate the sale of Conrail lines to the private sector and local governments. 127 Cong.Rec. H5956 (1981) (Explanatory Statement of House and Senate Conferees on Omnibus Reconciliation Act of 1981). The overriding intent of Congress was to provide an unobstructed opportunity for Conrail to become a solvent operation and to return it to the private sector.[2]
After the enactment of NRSA, pursuant to § 308 of the 3 R Act, Conrail began abandonment procedures on many of its rail lines.[3] Conrail alleges that it filed three applications with the Interstate Commerce Commission (ICC) for approval of the abandonment of the three contested segments of the Scranton Line: Port Morris Junction to State Line, New Jersey; State Line to Slateford, Pennsylvania; and Analomink to Mt. Pocono, Pennsylvania. The statute provides that after Conrail files an application to abandon, parties interested in continuing rail service on those lines have 90 days to submit an "offer of financial assistance" to subsidize or purchase the lines and assure continued operation. Section 308(d), 45 U.S.C. § 748(d). Conrail maintains that no offer of financial assistance was submitted for the New Jersey segment. The County submitted offers for the two Pennsylvania segments at issue in this lawsuit, however, Conrail alleges the County withdrew the offers with the intent to pursue acquisition under the discount provisions of NRSA. Section 308(e)(3), 45 U.S.C. § 748(e)(3).[4]
The ICC approved abandonment of the two Pennsylvania segments of the Scranton Line on July 7, 1982, and thereafter appraised the net liquidation values of the lines, and published those appraisals in the Federal Register.[5] Conrail received no offers to purchase the lines at 75% of net liquidation value, as provided for by § 308(e)(3)(A), 45 U.S.C. § 748(e)(3)(A).[6]
Prior to expiration of the 120-day period available for making offers at 75% of net liquidation value, the County filed an action on February 8, 1983 in the United States District Court for the Middle District of Pennsylvania seeking injunctive relief to prevent Conrail from dismantling any segment of track on the Scranton Line, running between Scranton, Pa. and Port Morris, N.J. The County originally alleged that Conrail had violated § 304(b) of the 3 R Act, 45 U.S.C. § 744(b) by failing to provide the County with sufficient notice before proceeding with abandonment of the line. The County also alleged violations of the Sherman Act, claiming that the abandonment and liquidation of the Scranton Line was undertaken in a manner which precluded other entities from operating a railroad in competition with Conrail's Lehigh Valley Line, placing Conrail in a monopoly position in Eastern Pennsylvania.
On February 10, 1983, the County amended its complaint to drop the challenge to Conrail's abandonment under the 3 R Act and NRSA. The County has, since February *1390 10, only pursued the antitrust cause of action.
The County applied for a temporary restraining order (TRO), seeking to enjoin Conrail from physically dismantling the railroad track on the Scranton Line. The District Court for the Middle District of Pennsylvania found that the County would suffer irreparable harm if the injunction did not issue, and restrained Conrail from disassembling the portions of the Scranton Line that it had scheduled for removal. (Slip opinion, March 2, 1983, M.D.Pa., CV. No. 83-0167). The TRO expired on March 12, 1983. Conrail has not attempted to remove any additional trackage.
After issuance of the TRO, and before any action was taken on the merits of the County's claim in the Pennsylvania court, Conrail filed this action in the Special Court. Conrail maintains that the defendants are precluded from seeking an injunctive order concerning its abandonment plan in any tribunal other than the Special Court. Conrail contends that the removal of the track on the Scranton Line is provided for by statute under § 308 of the 3 R Act as added by § 1156 to NRSA, 45 U.S.C. § 748 and as a provision of NRSA, this court must exercise original and exclusive jurisdiction over all aspects of the abandonment procedures.
In opposing Conrail's motion for declaratory and injunctive relief, the County filed a motion to dismiss. In its motion, the County maintains that this court lacks jurisdiction to enjoin it from pursuing its action in the Pennsylvania court, asserting that in effect this would amount to staying the proceedings in that court. Additionally, the County claims that its antitrust claim in the District Court in Pennsylvania is unrelated to NRSA, thus depriving the Special Court of jurisdiction over the matter. In the alternative, the County urges that, assuming that we find original and exclusive jurisdiction, we should abstain from exercising it in this case.
The jurisdiction of this court is encompassed in § 1152 of NRSA as follows:
(a) Notwithstanding any other provision of law, the special court shall have original and exclusive jurisdiction over any civil action 
(1) for injunctive, declaratory or other relief relating to the enforcement, operation, execution, or interpretation of any provision of or amendment made by this subtitle, or administrative action taken thereunder to the extent such action is subject to judicial review.
It would appear that, on its face, NRSA does not confine this court to a limited range of issues, as is the case under the 3 R Act.[7] However, we believe that implicit in the grant of original and exclusive jurisdiction to the Special Court under NRSA is the intention that it will not consider every issue which might tangentially touch the provisions of NRSA. Our jurisdiction is limited to litigation which has the potential for significantly affecting implementation of the Act.[8]
In light of this approach, the defendants' contention that their lawsuit is strictly an antitrust action which in no way directly concerns any aspect of NRSA falls of its own weight. Our jurisdiction is not triggered by the label of a civil action, but by the type of relief sought. As we have indicated, the County seeks to prevent Conrail from dismantling its rail line. This obviously relates to "the operation" of the abandonment provisions of NRSA, and given the importance of these provisions to the overall legislative purpose, it in no way can be characterized as peripheral to the implementation of the statute. Thus we have no doubt that the action presently before us falls squarely within our jurisdiction.
*1391 The County, in its motion to dismiss, asserts that this court has no jurisdiction over this action because NRSA does not contain a provision analogous to § 209(g) of the 3 R Act, authorizing the Special Court to stay an action in another court. We need not reach this issue, since we are enjoining defendants from pursuing injunctive relief. We are not attempting to stay the district court in the proper exercise of its jurisdiction.
It is therefore ORDERED that the County of Monroe and its Board of Supervisors are hereby enjoined from pursuing further injunctive relief in County of Monroe v. Conrail, CV. No. 83-0167 (M.D.Pa.).
NOTES
[1] Section 308(e):

LIQUIDATION.  (1) If any application for abandonment is granted under subsection (b) of this section, the Commission shall, as soon as practicable, appraise the net liquidation value of the line to be abandoned, and shall publish notice of such appraisal in the Federal Register.
(2) Appraisals made under paragraph (1) shall not be appealable.
(3)(A) If, within 120 days after the date on which an appraisal is published in the Federal Register under paragraph (1), the Corporation receives a bona fide offer for the sale, for 75 percent of the amount at which the liquidation value of such line was appraised by the Commission, of the line to be abandoned, the Corporation shall sell such line and the Commission shall, unless the parties otherwise agree, establish an equitable division for joint rates for through routes over such lines.
(B) If the Corporation receives no bona fide offer under subparagraph (A), within such 120-day period, the Corporation may abandon or dispose of the line as it chooses, except that the Corporation may not dismantle bridges, or other structures (not including rail, signals, and other rail facilities) for 120 days thereafter. The Secretary may require that bridges or other structures (not including rail, signals, and other rail facilities), not be dismantled for an additional 8 months if he assumes all liability of any sort related to such property.
(4) If the purchaser under paragraph (3)(A) of this subsection of any line of the Corporation abandons such line within five years after such purchase, the proceeds of any track liquidations shall be paid into the general fund of the Treasury of the United States.
[2] See § 1133 of NRSA, 45 U.S.C. § 1102.
[3] Conrail Complaint ¶ 11.
[4] Conrail Complaint ¶ 18.
[5] 47 Fed.Reg. 47479, 49095.
[6] Conrail Complaint ¶ 19.
[7] See § 209(e) of that Act, 45 U.S.C. § 719(e).
[8] By way of illustration, if some adjacent landowner to a railroad right of way brought a complaint for trespass arising out of Conrail's dismantling process, that lawsuit would not fall within the jurisdiction of the Special Court because the matter complained of would involve the provisions of NRSA only tangentially.