**William A. LUCAS; August Lucas; David J. Kushon; Janie B. Kushon, Appellants**

v.

**TOWNSHIP OF BETHEL; James Riederer; Robert E. Prunty; Margaretta Reed; Allegheny Valley Land Trust**

No. 01–3946.

United States Court of Appeals, Third Circuit.

Argued April 30, 2002.

Filed Feb. 11, 2003.

Andrew G. Kimball, (Argued), Dickie, McCamey & Chilcote, P.C., Pittsburgh, for Appellees.

Karen E. Chilcote, (Argued), Lori D. Mendicino, Robb, Leonard & Mulvihill, Pittsburgh, for Appellees.

William C. Smith, (Argued), Pittsburgh, for Appellants.

Before ROTH, NYGAARD and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge.

This jurisdictional dispute requires us to decide whether the District Court or the Surface Transportation Board (STB) has authority to resolve a property claim involving a defunct railroad line. The line, known as the Allegheny Secondary Track, was used by the Consolidated Rail Corpo-

ration (Conrail) as a railroad right of way. In 1989, the STB's predecessor, the Interstate Commerce Commission (ICC),[1] granted Conrail unconditional authorization to abandon the Allegheny Secondary Track. See Section 308 of the Regional Rail Reorganization Act, 45 U.S.C. § 748(c). Conrail subsequently sold its interest in the right of way to the Allegheny Valley Land Trust (AVLT), which intended to convert the line to a trail use.

Notwithstanding Conrail's sale to the AVLT, plaintiffs, who own real property underlying the Allegheny Secondary Track, claim that Conrail's interest reverted to them when Conrail abandoned its right of way. Thus, when the AVLT permitted the Township of Bethel to enter plaintiffs' property and remove materials from the Allegheny Secondary Track, plaintiffs brought this lawsuit, claiming that the Township trespassed on their property and violated their constitutional rights.

The District Court dismissed plaintiffs' claims on the ground that it lacked subject matter jurisdiction to determine whether Conrail had abandoned its line. Despite the ICC's unconditional authorization of abandonment, the District Court held that the STB retained exclusive jurisdiction over the issue of abandonment. The court reasoned that the STB would retain exclusive jurisdiction unless and until it determined that Conrail fully abandoned the rail line and that the abandonment occurred before the AVLT converted the line to a trial use. Otherwise, the current trail use of the Allegheny Secondary Track would provide continued basis for STB jurisdiction under the National Trails Act,

16 U.S.C. § 1247(d), and would prevent the right of way from reverting to plaintiffs.

We will reverse the District Court's dismissal of this action. We hold that the ICC's unconditional authorization of abandonment was sufficient to end its jurisdiction over the Allegheny Secondary Track. First, the abandonment was authorized under § 308, a provision that substantially limits the STB's authority to place the usual conditions on abandonment of a railroad right of way. Second, both the Supreme Court and this Court have noted that the ICC's jurisdiction ends once it grants *unconditional* authorization to abandon a line, as is the case here. Finally, the ICC was never asked to intervene and prevent abandonment by certifying an interim trail use under the National Trail Act. Thus, the Act's provisions are inapplicable to this case. We address these points in more detail below.

## I. Facts and Procedural History

Plaintiffs own two separate parcels of real estate. In 1852, a previous owner of the land subjected both parcels to a railroad right of way, known as the Allegheny Secondary Track. Since that time, a number of different railroad companies have operated trains over the Allegheny Secondary Track. Conrail acquired this right of way on April 1, 1976, and had common carrier obligations on the track from April 1, 1976, until June 8, 1989.

On June 8, 1989, the ICC authorized Conrail to discontinue service over the Allegheny Secondary Track pursuant to § 308(c) of the Regional Rail Reorganization Act. Plaintiffs claim that Conrail's in-

---

**1.** Effective January 1, 1996, the ICC was abolished and the STB was established to assume the responsibility of regulating rail transportation. ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 804, 49 U.S.C. § 701,

note. *See Friends of Atglen–Susquehanna Trail, Inc. v. STB,* 252 F.3d 246, 250 n. 1 (3d Cir.2001). With regard to events in this case that predate the STB, we will refer to the ICC as the agency in place at the time.

terest in the right of way reverted to them when Conrail abandoned the line pursuant to the ICC's order. Thus, plaintiffs deny that the AVLT was authorized to allow the Town of Bethel to enter plaintiffs' property in order to remove ballast [2] from the right of way.

### A. Abandonment under § 308(c) of the Regional Rail Reorganization Act.

In the Northeast Rail Service Act of 1981 (NERSA), Congress amended the Regional Rail Reorganization Act of 1973 by adding § 308.[3] Under § 308(c), Conrail may abandon an unprofitable right of way by filing a notice of insufficient revenues, waiting at least 90 days, and then filing an application for abandonment. *See* 45 U.S.C. § 748(c). The express language of § 308(c) requires the ICC to grant Conrail's application 90 days after it is filed and allows the agency to delay abandonment only if an offer of financial assistance is made within 90 days of Conrail's application. 45 U.S.C. § 748(c)-(d); 49 U.S.C. § 10904(d)(2). The ICC has also noted that it may delay § 308 abandonments under the interim use provisions set forth in the National Trails Act, 16 U.S.C. § 1247(d). See *Rail Abandonments—Use of Right of Ways as Trails*, 2 I.C.C.2d 591, 613 (April 16, 1986).

Conrail initiated this abandonment procedure on October 31, 1985. It notified the ICC that it intended to abandon the Allegheny Secondary Track by filing a notice of Insufficient Revenues under § 308(c). Conrail filed an application for approval of abandonment well over 90 days later, on March 8, 1989. On June 8, 1989, and as required by § 308, the ICC authorized Conrail to abandon its line. The ICC's certificate of abandonment states that no offer of financial assistance was made within 90 days of Conrail's application, and, thus, there was no reason to delay approval under § 308(c). The June 8, 1989, certificate does not suggest that the ICC intended to place any National Trails Act conditions on Conrail's abandonment of its line. The ICC neither mentioned the provisions of 16 U.S.C. § 1247(d) nor certified an interim trail use.[4] The ICC's June 8 order has never been appealed and neither the ICC nor the STB has ever reopened abandonment proceedings.

### B. Sale of Conrail's Right of Way.

After the ICC issued its order authorizing abandonment, Conrail pursued the sale of its interest in the Allegheny Secondary Track. One of the parties with which it negotiated was the AVLT, a non-profit organization that seeks to convert unused railroad beds into recreational trails while preserving the road beds for future rail uses. Before the AVLT purchased the Allegheny Secondary Track rail corridor from Conrail, it entered into a bridge maintenance agreement with the County of Armstrong and the county's Conservancy Charitable Trust. Both the bridge agreement and a piece of related correspondence sent to Conrail made reference to

---

**2.** Ballast is a coarse stone used to form the bed of a railroad track or road.

**3.** The amendment adding § 308 was enacted as § 1156 of the NERSA, and as Subtitle E of the Omnibus Budget Reconciliation Act of 1981 (Public Law No. 97–35). It is codified at 45 U.S.C. § 748.

**4.** Nor did it address the requirements of the National Historic Preservation Act, 16 U.S.C. § 470f. *See Friends of the Atglen–Susquehanna Trail*, 252 F.3d at 251. We need not address the applicability of § 470f in this case, however, as there is nothing in the record to suggest that the line abandoned by Conrail would be "eligible" for inclusion in the National Register.

the AVLT's intention to use the property as a rail trail.

Conrail sold the rail corridor to AVLT on January 7, 1992. At the time of sale, all the equipment for operating trains on the corridor remained intact. The sale agreement explicitly allowed Conrail the right to remove the railroad track and all its appurtenant materials, excluding ballast and bridges. Conrail's sale agreement also stated that it did not contemplate providing rail service on the property.

Several times after the sale, the AVLT declared its intention to preserve the Allegheny Secondary Track as an interim recreational use trail under the National Trails Act, 16 U.S.C. § 1247(d). Conrail, however, refused the AVLT's request to apply for an extension from the ICC to authorize "rail banking" of the corridor, as is require by ICC regulations if the roadbed is to be preserved for trail use. 49 C.F.R. § 1152.29(c)(1). Moreover, the AVLT never filed for an interim use with the ICC, another regulatory requirement for trail use. 49 C.F.R. § 1152.29(a). On April 6, 1992, Conrail requested approval from the Pennsylvania Public Utilities Commission (PUC) to remove rails and ties at certain crossings along the Allegheny Secondary Track. After October 15, 1992, when the PUC approved abolishment of all but one of these crossings, Conrail entered an agreement to sell various track materials, excluding ballast, to a salvage company.

### C. First state court action.

In August of 1995, plaintiffs filed an action in the Court of Common Pleas of Armstrong County and named as defendants the AVLT, the Conservancy, the Armstrong Rails to Trails Association, Conrail, and the officers of these organizations. The plaintiffs sought a declaratory judgment that Conrail had abandoned the Allegheny Secondary Track; an accounting; damages for disparagement and slander of property, trespass and continuing trespass; and injunctive relief barring any continuing trespass. Claims against Conrail were dismissed at the pleadings stage because plaintiffs alleged, and Conrail agreed, that it had abandoned its interest in the land at issue. The Pennsylvania Superior Court affirmed the dismissal of claims against Conrail.[5] Claims against the remaining parties were remanded to the trial court and proceeded to summary judgment. Because the summary judgment ruling both post-dates and relies upon the District Court's ruling in this case, we will discuss that ruling along with our discussion of the District Court proceedings, below.

### D. Removal of ballast.

In approximately July of 1997, the AVLT offered the Township of Bethel the opportunity to remove and keep the ballast on the Allegheny Secondary Track. When the Township accepted, it was unaware of the pending lawsuit and it relied on AVLT's representation that it owned the right to the ballast. Plaintiffs and the Township dispute whether the Township removed survey stakes and additional soil material in addition to ballast. Plaintiffs also testified that they objected when they learned of the Township's action.

### E. Current lawsuit.

Plaintiffs filed a lawsuit against the Town of Bethel and its agents on October

5. This Superior Court decision to excuse Conrail from a property dispute over a line that it no longer operates is distinct from the jurisdictional determination at issue here. Thus, we reject plaintiffs' argument that the Pennsylvania Superior Court's dismissal of Conrail has preclusive effect on the issue of STB jurisdiction over the Allegheny Secondary Track.

1, 1998. Their complaint includes a state law claim for trespass and continuing trespass, as well as federal § 1983 claims alleging violations of the Fourth Amendment, the Takings Clause of the Fifth Amendment, and substantive and procedural due process under the Fourteenth Amendment. Defendants filed a third-party complaint against AVLT on December 4, 2000.

AVLT and defendants joined in a motion to dismiss based on a lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). They argued that the District Court lacked jurisdiction to address plaintiffs' trespass and constitutional claims because the STB has exclusive and plenary jurisdiction over the initial determination of whether Conrail has fully abandoned the Allegheny Secondary Track, a central threshold issue underlying plaintiffs' claims. The Magistrate Judge agreed and recommended that the action be dismissed. The District Court issued an order on October 1, 2001, adopting this recommendation and dismissing the action without prejudice. Plaintiffs filed a timely notice of appeal.

On April 8, 2002, the Armstrong County Court of Common Pleas followed the District Court's ruling and held that it lacked subject matter jurisdiction over plaintiffs' property claims against the AVLT et al. See *Moody v. AVLT et al.*, Opinion and Order re: Cross Motions for Summary Judgment, No.1995–0963 (April 8, 2002).[6]

## II. Jurisdiction

We have federal question jurisdiction over plaintiffs' claims brought under 42 U.S.C. § 1983, and pendent jurisdiction over plaintiffs' state law trespass claims arising out of a common nucleus of operative facts. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367(a). We will address below whether the District Court had subject matter jurisdiction over takings and trespass claims involving a railroad right of way for which the ICC has authorized unconditional abandonment.

■■■ Although the District Court dismissed this case without prejudice, this order is final and appealable because plaintiffs have elected to stand on their complaint. *See Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir.1991) ("If the plaintiff ... elects to stand on the dismissed complaint, however, we have held that the order of dismissal [without prejudice] is final and appealable").

## III. Discussion

■■■ The District Court held that it lacked jurisdiction over plaintiffs' trespass and constitutional claims based on interference with property rights. It adopted the Magistrate Judge's determination that the STB had exclusive and plenary jurisdiction to determine whether Conrail had abandoned its right of way over the Allegheny Secondary Track. This determination was based on a finding that the STB will retain jurisdiction unless and until it makes an initial determination that Conrail has fully abandoned the Allegheny Secondary Track.

Under the circumstances of this case, however, it is plain that the ICC's unconditional authorization of abandonment ended the federal agency's regulation of the Allegheny Secondary Track. Because the abandonment certificate contained no conditions permitting continued regulation by a federal agency, there is no need for the STB to determine whether it still has jurisdiction or whether Conrail has met all of

---

**6.** We are disturbed that none of the parties to this case notified us of the Pennsylvania Court of Common Pleas' April 8 ruling. We do note, however, that the state court's subsequent ruling does not preclude us from making an independent evaluation of the initial judgment of the District Court.

its conditions and effectuated an abandonment sufficient to terminate the agency's jurisdiction. The ICC clearly indicated its intent to end federal regulation of the Allegheny Secondary Track. Thus, there is no jurisdictional bar to the District Court resolving a property dispute based on the effect of actions Conrail took after the ICC gave it carte blanche to cease rail service.

The fundamental misstep taken by the District Court was its failure to recognize the ICC's unusually limited role in the abandonment proceedings for the Allegheny Secondary Track. First, the statutory provision governing Conrail's abandonment of this track is § 308 of the Regional Rail Reorganization Act of 1973, 45 U.S.C. § 748. Section 308 limits the ICC's usual authority to impose abandonment conditions by providing expedited procedures for certain abandonment requests filed by Conrail. Second, under these expedited abandonment procedures, the ICC granted Conrail *unconditional* authority to abandon its line. This unconditional abandonment terminated the agency's jurisdiction over the Allegheny Secondary Track. Third, the ICC was never asked to intervene and prevent abandonment by certifying an interim trail use under the National Trails Act, 16 U.S.C. § 1247(d). The record makes clear that the ICC's role has ceased. Thus, the question of ownership of the roadbed after abandonment is ripe for disposition under state property law.

**A. The District Court failed to recognize that Conrail's abandonment was authorized under § 308(c).**

The District Court's first error was its apparent failure to recognize that Conrail

received approval to abandon its line under § 308(c), a statutory provision which substantially limits the ICC's involvement in abandonment proceedings. The District Court instead treated the ICC's order as a run-of-the-mill abandonment authorized under the Interstate Commerce Act. These run-of-the-mill proceedings, however, come under a different statutory provision which grants the ICC a more active role in abandonments than does § 308.

Although federal law did not initially subject railroad abandonments to the jurisdiction of the ICC, by 1920 Congress had ceded regulatory authority over railroad abandonments to it. *Hayfield Northern Railroad Company v. Chicago and North Western Transportation Company*, 467 U.S. 622, 628, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984). The subsequent enactment of § 308 exempted certain railroad abandonments from the lengthier abandonment proceedings required under the Interstate Commerce Act, 49 U.S.C. § 10903–6. Section 308 provides a streamlined procedure for the ICC to process applications to abandon railways and is limited to abandonment applications that are initiated by Conrail prior to November 1, 1985.[7]

Congress enacted § 308 in order to provide Conrail with "an unobstructed opportunity to become a solvent operation." *Consolidated Rail Corp. v. County of Monroe*, 558 F.Supp. 1387, 1389 (1983). The ICC has stated that, in essence, "section 308 requires [it] to grant, *without examination*, any Conrail abandonment application unless an offer of financial assistance is timely filed." *See Conrail*

7. Specifically, § 308 does not subject abandonments to the notice requirements and public convenience and necessity findings that apply to the more common abandonment proceedings under 49 U.S.C. § 10903. *See* 45 U.S.C. § 748(a) (application for certificates of abandonment under this section "shall not,

except as specifically provided by this section, be subject to the provisions of chapter 109 of Title 47"). Moreover, abandonments under section 308(c), which are initiated from December 1, 1981 to November 1, 1985, are not subject to the liquidation provisions of 308(e).

*Abandonments Under NERSA,* 365 I.C.C. 472, 472–73 (November 25, 1981).[8] Thus, the abandonment proceedings established by § 308 contemplate limited agency involvement and virtually automatic approval of Conrail's request to abandon its line.

The District Court failed to consider § 308, and the limited nature of the ICC's involvement in abandonment proceedings thereunder, when it determined that the STB retained jurisdiction over the Allegheny Secondary Track. This is evident from the court's statement that the Court of Appeals would have exclusive jurisdiction over the ICC's abandonment certificate under the Hobbs Act, 28 U.S.C. § 2342(5). Abandonment proceedings under § 308, however, may be appealed only to the Special Court, Regional Rail and Reorganization Act of 1973,[9] and not to the Court of Appeals which, under the Hobbs Act Court, would hear appeals of orders entered under the Interstate Commerce Act. 45 U.S.C. § 1105; *Edison Electric Institute v. ICC,* 765 F.2d 210, 215 (D.C.Cir.1985). As explained below, the District Court's failure to recognize the proper statutory provision, which governed Conrail's abandonment, led it to an erroneous jurisdictional conclusion.

**B. Unconditional authorization of abandonment, as Conrail obtained under § 308, will terminate the ICC's jurisdiction.**

Failure to grasp the *unconditional* nature of the ICC's abandonment certificate under § 308 also led the District Court to

apply the wrong jurisdictional analysis. In cases where the ICC has placed no conditions on a railroad abandonment, both the Supreme Court and this Court have noted that the ICC's decision to authorize an abandonment will bring its jurisdiction to an end. As the Supreme Court stated in *Hayfield,* 467 U.S. at 633, 104 S.Ct. 2610, "unless the Commission attaches postabandonment conditions to a certificate of abandonment, the Commission's *authorization* of an abandonment brings its regulatory mission to an end." *Id.* (emphasis added). Likewise, we have noted the applicability of *Hayfield* in cases where the federal agency does not place any conditions on abandonment: "Unless the STB attaches post-abandonment conditions to a certificate of abandonment ... the authorization of abandonment ends the Board's regulatory mission and its jurisdiction." *See Friends of Atglen–Susquehanna Trail, Inc. v. STB,* 252 F.3d 246, 262 (3d Cir. 2001).[10] Although the few reported proceedings regarding abandonments under § 308 do not address this rule, they offer no suggestion that a different rule should apply to an unconditional abandonment under § 308. Indeed, the expedited nature of a § 308 abandonment would argue strongly in favor of applying this "unconditional abandonment" rule to terminate the ICC's regulatory role in the case of a § 308 abandonment.

■ The District Court, however, relied on the general rule applied to the vast majority of railroad abandonments—which are conditional abandonments under the

---

8. Although the ICC may delay § 308 abandonments under the interim use provisions of the National Trails Act, 16 U.S.C. § 1247(d), we explain below why the National Trails Act is inapplicable here.

9. The Rules of the Special Court are set forth at 45 U.S.C. § 719. The Special Court was dissolved on January 17, 1997, and its jurisdiction and functions were assumed by the

United States District Court for the District of Columbia, 45 U.S.C. § 719(b).

10. The D.C. Circuit has taken this rule a step further and found abandonment based on a *conditional* ICC order, where "nothing in the condition recites a limitation on the ability of CSX to effect an abandonment." *Fritsch v. ICC,* 59 F.3d 248, 253 (D.C.Cir.1995).

Interstate Commerce Act. The jurisdictional rule for unconditional abandonments differs from the general rule applied to conditional abandonments. When an abandonment is conditional, the ICC retains jurisdiction over a railroad right of way until it has been abandoned pursuant to the conditions established by the federal agency. *See Preseault v. ICC*, 494 U.S. 1, 5 n. 3, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990); *Hayfield*, 467 U.S. at 633, 104 S.Ct. 2610; *see also Birt v. STB*, 90 F.3d 580, 589 (D.C.Cir.1996). In such cases, the agency also retains exclusive, plenary jurisdiction to determine *whether there has been an abandonment* sufficient to terminate its jurisdiction. *See Friends of the Atglen–Susquehanna Trail*, 252 F.3d at 262 (rejecting argument that rail line had been abandoned "because there has been no STB finding that Norfolk consummated abandonment of the rail line").[11] Because Conrail's abandonment was authorized without conditions under the provisions of § 308, the District Court erred in following the general rule to conclude that the STB retained exclusive jurisdiction. As explained above, the ICC's unconditional abandonment order makes clear that there is no basis for continued federal regulation of the Allegheny Secondary Track.

█ Moreover, because the District Court failed to recognize that the ICC's unconditional abandonment certificate ended the agency's jurisdiction, it also failed to note that any property disputes regarding the railroad's right of way may be resolved according to state property law:

"When abandonment approval is given ... state property law returns to the foreground and controls the disposition of the land." *National Assoc. of Reversionary Property Owners v. STB*, 158 F.3d 135, 137 (D.C.Cir.1998). This conclusion has been supported by the Special Court which has noted that another court would not interfere with its exclusive jurisdiction by resolving property disputes of this ilk: If "some adjacent landowner to a railroad right of way brought a complaint for trespass arising out of Conrail's dismantling process, that lawsuit would not fall within the jurisdiction of the Special Court." *Consolidated Rail Corp. v. County of Monroe*, 558 F.Supp. 1387, 1390 n. 8 (1983).

Thus, we conclude that in this case the District Court is free to determine, as a matter of state law, whether Conrail has abandoned its right of way and whether its interest in the right of way has reverted to plaintiffs. Resolution of this question will not interfere with the STB's exclusive jurisdiction to authorize abandonments because the federal agency has already granted unconditional authority for Conrail to terminate service.

**C. The AVLT has not invoked the STB's jurisdiction under the provisions of the National Trail Act.**

█ Our jurisdictional analysis is not altered by defendants' claim that the AVLT prevented abandonment by converting the railroad right of way to a trail under the provisions of the National Trails

---

11. Historically, the STB determined whether an abandonment was consummated by evaluating the carrier's objective intent to cease permanently or indefinitely all transportation service on the line. *Id*. This test leaves a great deal of uncertainty as to the rail line's status, however. Since 1997, the STB has taken steps to alleviate this problem by renewing a requirement that railroads file with the agency a letter confirming consummation

of abandonment. *Becker v. Surface Transportation Board*, 132 F.3d 60, 61 n. 2 (D.C.Cir. 1997) (noting that the STB recently amended its regulations to require that railroads file a notice of consummation with the STB); *see also Consolidated Rail Corp. v. Surface Transportation Board*, 93 F.3d 793 (D.C.Cir.1996) (discussing pre–1984 requirement that railroads file with the ICC a letter confirming consummation of abandonment).

Act, 16 U.S.C. § 1247(d). The National Trails Act is designed to prevent an interest in a railroad right of way from reverting under state law when the right of way is used as a trail after the railroad discontinues service. *Preseault*, 494 U.S. at 8, 110 S.Ct. 914. Thus, if the STB certifies an interim trail use, and an agreed trail use is negotiated in a timely manner, the STB will maintain federal jurisdiction over the right of way. The National Trail Act's provisions are applicable to abandonment proceedings under § 308. See *Rail Abandonments—Use of Right of Ways as Trails*, 2 I.C.C.2d 591, 613 (April 16, 1986).

In order to preserve the right of way, however, the STB requires a sponsor wishing to maintain a trail to file certain documentation describing the site, indicating the user's willingness to assume full responsibility for management, legal liability, and taxes, and acknowledging the user's continuing obligation to meet its responsibilities. 49 C.F.R. § 1152.29(a); see also *Citizens Against Rails–to–Trails v. STB*, 267 F.3d 1144, 1150 (D.C.Cir.2001). If the abandonment is authorized under § 308, the railroad must agree to negotiate a rail banking agreement before the STB will issue a certificate of interim use (or CITU) to prevent the right of way from reverting under state property law. 49 C.F.R. § 1152.29(c)(1) (discussing requirements applicable to NERSA abandonments, which include abandonments under § 308).[12] The AVLT never met these requirements by filing with the ICC or STB, and Conrail refused to join the AVLT in filing for railbanking with the ICC. Thus, there is no basis for arguing that the STB

has jurisdiction over this matter under the provisions of the National Trails Act.

Nor does the District Court's reliance on the Eighth Circuit's opinion in *Grantwood Village v. Missouri Pac. R.R. Co.*, 95 F.3d 654 (8th Cir.1996), support a contrary decision. *Grantwood* involved an abandonment under the Interstate Commerce Act, 49 U.S.C.A. §§ 10903–04, in which one party filed a request for interim use during abandonment proceedings before the ICC. *Id.* at 656. There, the ICC granted a notice of interim use (or NITU),[13] and the parties reached a trail use agreement within the time provided by the ICC. *Id.* A subsequent quiet title action raised the question of whether the trail use agreement precluded abandonment and reversion to the owners of the underlying property.

The Eighth Circuit Court of Appeals held that the suit amounted to a collateral attack on the ICC's allowance for an interim trail use and that the ICC's authorization of such trail use precluded a finding that the right of way had been abandoned under state law. *Grantwood*, 95 F.3d at 657–58. In this case, however, regulatory requirements for an interim trail use have not been met. A request for interim trail use has never been filed with the ICC or the STB and neither agency has authorized an interim use. 49 C.F.R. § 1152.29(a). Nor could the AVLT meet these requirements because Conrail did not agree to join the AVLT in filing with the ICC for rail banking. 49 C.F.R. § 1152.29(c)(1). Thus, the ICC has not authorized the AVLT to conduct any trail

**12.** Although there is authority supporting the ICC's ability to authorize interim use based on a late-filed application, the ICC cannot take such action after its jurisdiction over a railway has ended, as is the case here, *see Illinois Central Railroad Co.–Abandonment–In Dewitt and Piatt Counties*, IL, 5 I.C.C.2d 1054, 1060–61 (1989).

**13.** A NITU is the type of interim trail use permit that the ICC uses in a proceeding involving the exemption of a route from ICC regulation; in other proceedings, including abandonments under section 308, the agency will issue a Certificate of Interim Trail Use, or CITU. *See, e.g.*, 49 C.F.R. § 1152.29.

use that would preclude a finding of abandonment of the Allegheny Secondary Track under state law. *Grantwood* is inapplicable.

## IV. CONCLUSION

As explained above, it is clear that the ICC's regulatory role over the Allegheny Secondary Track has ended and that there is no basis for continued agency regulation of this railroad right of way. Thus, there is no jurisdictional impediment to the District Court's adjudication of plaintiffs' property dispute. We will reverse the District Court's October 1, 2001, Order dismissing this case without prejudice and remand it for further proceedings consistent with this opinion.