

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-9-2007

# Frederico v. Home Depot

Precedential or Non-Precedential: Precedential

Docket No. 06-2266

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Frederico v. Home Depot" (2007). *2007 Decisions.* Paper 160.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/160

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 06-2266

————

JANELLE FREDERICO, individually and on behalf
of a class of similarly situated persons,

Appellant

v.

HOME DEPOT

————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No.05-cv-05579)
District Judge: Hon. Joel A. Pisano

————

Argued July 12, 2007

Before: SLOVITER, ALDISERT and ROTH, Circuit Judges.

(Filed: November 9, 2007)

Khalid A. Elhassan (Argued)
EICHEN LEVINSON & CRUTCHLOW, LLP
40 Ethel Road
Edison, NJ 08817

      Attorney for Appellant

Dwight D. Davis (Argued)
S. Stewart Haskins
Tracy Klinger
KING & SPALDING, LLP
1180 Peachtree Street
Atlanta, GA 30309

Nicholas Stevens
STARR, GREN, DAVISON & RUBIN
103 Eisenhower Parkway
Roseland, NJ 07068

      Attorneys for Appellee

---

OPINION OF THE COURT

---

ALDISERT, <u>Circuit Judge</u>.

Plaintiff Janelle Frederico, for herself and on behalf of a class of similarly situated persons, appeals a judgment of the

2

United States District Court for the District of New Jersey that dismissed her complaint against The Home Depot, Inc. Alleging fraud and breach of contract, the complaint was dismissed without prejudice pursuant to Rules 9(b) and 12(b)(6), Federal Rules of Civil Procedure.

Her action was originally filed in the Superior Court of New Jersey, Law Division, Middlesex County. Home Depot then removed the case to the District Court for the District of New Jersey. Frederico made no motion to remand to state court. The District Court decided that jurisdiction was proper under 28 U.S.C. § 1332(d), pursuant to the Class Action Fairness Act of 2005 ("CAFA"). After the matter reached us, we raised the issue of jurisdiction <u>sua sponte</u> and offered the parties an opportunity to respond by letter to our concerns.

A threshold matter requires our attention: we must first decide whether the District Court's dismissal without prejudice meets the finality requirement of 28 U.S.C. § 1291 to vest this Court with jurisdiction. We will decide that matter in the affirmative and proceed to consider: (1) which party has the burden of establishing federal jurisdiction in the removal process; (2) the extent of that party's burden of proof; and (3) whether diversity jurisdiction is established by the record before us. After finding federal jurisdiction, we will address the merits of the case. For the reasons that follow we will affirm the judgment of the District Court.

I.

3

On Saturday, August 6, 2005, Frederico rented a flatbed truck from a Home Depot store located in South Plainfield, New Jersey, owned and operated by Defendant. Home Depot regularly provides short-term leases of trucks to customers to assist customers with the transportation of large purchases. During the transaction, Frederico signed a Vehicle Delivery Agreement ("Agreement") that provided "Date and Time Out: 08/06/2005 6:23 pm" and "Date and Time Due In: 08/06/2005 7:38 pm." App. at 80. According to the Agreement, Frederico was to rent the truck for a total of 75 minutes. The District Court summarized other relevant terms of the Agreement:

1.  Plaintiff's truck was due back to the store at 7:38 pm on August 6, 2005.
2.  The rental rate for the truck was $19.00 for the first seventy-five minutes and $5.00 for each additional fifteen minutes.
3.  The vehicle must be returned "to the Home Depot location where rented, on the date and at the time specified . . . IF NOT, A CLEANING CHARGE, DROP CHARGE, AND/OR RATE CHANGE MAY APPLY."
4.  The vehicle "MUST BE RETURNED TO THE STORE BEFORE CLOSING ON THE DAY OF RENTAL."
5.  The store hours listed were 6:00 - 10:00 on Saturdays.

4

> 6. "THE AGREEMENT DOES NOT PERMIT RENTAL OF THE VEHICLE FOR MORE THAN ONE DAY OR PAST THE TIME AT WHICH THE HOME DEPOT DEMANDS RETURN OF THE VEHICLE."

Id. at 121.

Frederico alleges that she "returned the truck to Home Depot on August 6, 2005, but was informed by Defendant that the rental department was closed, that Home Depot had no after-hours rental facilities or procedures, and to re-return the truck the following morning." Compl. ¶ 8. She returned the next morning[1] and paid $287.14, of which $269.00 represented the thirteen hours and forty-four minutes that she possessed the vehicle.

Frederico subsequently filed a class action complaint in state court, alleging that Home Depot breached its contract, violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. (2005) ("NJCFA"), and committed common law fraud. Her complaint states:

> The proposed class consists of (i) all New Jersey individual consumers (ii) who rented a vehicle from a Home Depot store with no after-

---

[1] The Vehicle Delivery Invoice shows "Date and Time In: 08/07/2005 8:07 am." App. at 80.

5

hours rental return facilities or procedures, (iii) who were unable to return the vehicle to Home Depot after-hours, and (iv) who were charged 'late' rental return fees for the after-hours period during which no vehicles could have been returned.

Id. ¶ 18.

## II.

Sua sponte, we raised the question of whether this court has jurisdiction over the District Court's judgment here entered "without prejudice."[2] Frederico invoked the jurisdiction of this Court pursuant to 28 U.S.C. § 1291, which grants this Court jurisdiction over appeals from final decisions of district courts. Appellant's Br. at 1.

We conclude that the District Court's March 9, 2006 Order granting Home Depot's motion to dismiss, from which Frederico appeals, is a final order, notwithstanding its "without prejudice" modifier. "Guided by the Supreme Court's directive that we employ a 'practical rather than a technical construction' of § 1291's finality requirement," we have held that a dismissal with leave to amend will be treated as a final order if the plaintiff has elected to "stand upon the original complaint." Shapiro v. UJB Financial Corp., 964 F.2d

---

[2] The parties addressed this issue in subsequent letter briefs to assist us in our determination.

272, 278 (3d Cir. 1992) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)); see also Berke v. Bloch, 242 F.3d 131, 135 (3d Cir. 2001) (concluding that it is "well-settled" in the Court of Appeals for the Third Circuit that an order dismissing a complaint without prejudice is final if the plaintiff has elected to stand on his complaint). Proceeding with appellate review here is consistent with the goal of the final judgment rule – to prevent piecemeal litigation – because, "if plaintiff cannot or will not bring a second action, there is no risk of multiple litigation." Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 878 (3d Cir. 1990).

Under this standard, the dismissal of the complaint is final and appealable because Frederico clearly indicated an intent to stand on the original complaint. At no time during the District Court's consideration of Home Depot's motion to dismiss, which included initial and supplemental briefing as well as oral argument, did Frederico offer or seek to amend the complaint to address the pleading deficiencies noted by Home Depot. Instead, she repeatedly asserted that the allegations contained in the complaint were legally sufficient. See, e.g., Plaintiff's Memorandum in Law in Opposition to the Defendant's Motion to Dismiss, Frederico v. Home Depot, 2:05-cv-00579JAP, at 2 (January 3, 2006) ("The claims contained in Plaintiff's Complaint are sufficient as a matter of law, and should not be dismissed.").

After the District Court dismissed the complaint and the clerk's office officially terminated the action, Frederico

7

did not seek to amend the complaint. Her only response was to file a notice of appeal. On appeal, she continues to argue that the factual allegations contained in her complaint are sufficient. See, e.g., Appellant's Br. at 9 ("The lower court's opinion is premised on the mistaken assumption that the Appellant/Plaintiff should have pled the evidence and facts underlying her Complaint."). Because Frederico has elected to stand on her original complaint rather than amend or refile it, the order dismissing the complaint without prejudice is final. See, e.g., Lucas v. Township of Bethel, 319 F.3d 595, 600 (3d Cir. 2003) (dismissal without prejudice was final and appealable because plaintiff chose to stand on the complaint); Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 n.5 (3d Cir. 1992) (holding that plaintiff elected to stand on complaint by failing to amend within specified time period); Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991) (finding appellate jurisdiction over dismissal without prejudice based on statements made in letter brief filed after appeal was initiated); Letter from William O. Crutchlow, Counsel for Appellant Janelle Frederico, to the Office of the Clerk, United States Court of Appeals for the Third Circuit (July 3, 2007) ("In the instant matter, Appellant/Plaintiff stands by her complaint.").

## III.

We now must decide whether this class action case removed to a federal court as a diversity matter properly meets the requisite amount in controversy set by CAFA. It is now settled in this Court that the party asserting federal

8

jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court. Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004); see also Morgan v. Gay, 471 F.3d 469, 473 (3d Cir. 2006) ("Under CAFA, the party seeking to remove the case to federal court bears the burden to establish that the amount in controversy is satisfied."). Our standard of review for issues of subject matter jurisdiction, including cases arising under CAFA, is plenary. Morgan, 471 F.3d at 472.

A.

We are aware that the quantum of proof to be used in ascertaining the requisite amount in removal cases sounding in diversity has caused some disagreement among the district courts of this circuit.[3] We also note the concern that "'[c]ourts in the Third Circuit [have been] unencumbered by consistency in their characterization of a defendant's burden of proving the amount in controversy on a motion to remand.'" Samuel-Bassett, 357 F.3d at 396 (quoting Irving v. Allstate Indemnity Co., 97 F. Supp. 2d 653, 654 (E.D. Pa. 2000)). Since that concern was first voiced, two cases decided by this Court sought to bring clarity and consistency to the jurisprudence in our circuit: Samuel-Bassett, 357 F.3d at 392 (class action removal case arising prior to the enactment of CAFA), and

---

[3] For a summary of such district court cases, see Samuel-Bassett, 357 F.3d at 396-397.

9

Morgan, 471 F.3d at 469 (class action removal case arising under CAFA). It is to these cases we now turn.

1.

Samuel-Bassett, decided prior to the enactment of CAFA, articulated a template for addressing subject matter jurisdiction challenges by examining two Supreme Court cases: St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938), and McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178 (1936).

In Red Cab, the plaintiff filed suit in state court and, in response to defendant's removal of the case, subsequently reduced its claim below the requisite amount. 303 U.S. at 285 (holding that "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached"). The Supreme Court articulated what has become known as the "legal certainty test," observing that when a case is brought in federal court, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 288. The case will be dismissed only if, "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount." Id. at 289.

In McNutt, the plaintiff brought suit in federal court and defendant contested the assertion in the complaint that the requisite matter in controversy was involved. McNutt, 298 U.S. at 179-180. The Supreme Court held: "[T]he court may . . . insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." Id. at 189.

This Court, in Samuel-Bassett, disentangled the "legal certainty" and "preponderance of the evidence" approaches of McNutt and Red Cab by distinguishing them on the grounds of whether the jurisdictional dispute surrounded factual matters: "In [McNutt], although a challenge to the amount in controversy had been raised in the pleadings, no evidence or findings in the trial court addressed the issue. In that respect Red Cab differs because these factual findings had been made." Samuel-Bassett, 357 F.3d at 397. As a result, in the many cases where disputes over factual matters are involved, the McNutt preponderance of the evidence standard is appropriate for resolving the dispute. By contrast, in those cases "when relevant facts are not in dispute or findings have been made," the district court should adhere to the "legal certainty test cited in such cases as Meritcare[ Inc. v. St. Paul Mercury Insurance Co.], 166 F.3d 214[ (3d Cir. 1993)]; Packard[ v. Provident Nat'l Bank], 994 F.2d 1039[ (3d Cir. 1993)]; Bloom v. Barry, 755 F.2d 356 (3d Cir. 1985); and Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971)." Samuel-Bassett, 357 F.3d at 398. Under the legal certainty test, as it appears in those cases, "[w]hen it appears to a legal certainty

11

that the plaintiff was never entitled to recover the jurisdictional amount, the case must be dismissed." Packard, 994 F.2d at 1046; see also Meritcare, 166 F.3d at 217 ("When it appears to a legal certainty that the plaintiff was never entitled to recover the minimum amount set by Section 1332, the removed case must be remanded . . . ."); Bloom, 755 F.2d at 358 ("[T]he court properly applied the 'legal certainty' test with respect to the jurisdictional amount announced in [Red Cab]."); Nelson, 451 F.2d at 293 (citing Red Cab for the proposition that to determine "good faith," "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal") (citing Jaconski v. Avisun Corp., 359 F.2d 931, 934 (3d Cir. 1966)).

As Judge Norma L. Shapiro observed in Valley v. State Farm Fire and Cas. Co.:

> All these cases [cited by Samuel-Bassett] cite to and rely upon the Red Cab legal certainty standard . . . . The legal certainty standard established by the Court of Appeals in Samuel-Bassett is the same standard established by the Supreme Court in Red Cab.
>
> Under Red Cab, a case must be dismissed or remanded if it appears to a legal certainty that the plaintiff cannot recover more than the jurisdictional amount of $75,000. The rule does not require the removing defendant to prove to a legal certainty the plaintiff can

12

recover $75,000 – a substantially different standard. This reading of the legal certainty test is supported by <u>Meritcare</u>, <u>Bloom</u>, <u>Packard</u>, and <u>Nelson</u>. None of these cases require the defendant to prove the jurisdictional amount to a legal certainty in order to remain in federal court.

504 F. Supp. 2d 1, 3-4 (E.D. Pa. 2006) (internal citations omitted).

2.

Two years after <u>Samuel-Bassett</u>, this Court was presented with our first class action diversity removal case brought under CAFA, <u>Morgan v. Gay</u>, 471 F.3d at 469. <u>Morgan</u> came to our Court on an appeal from a district court order granting plaintiff's motion to remand to state court, on the grounds that the amount in controversy required to support a diversity action under 28 U.S.C. § 1332(d)(2), an amount in excess of $5 million, had not been demonstrated.[4] <u>Id.</u> at 471. In <u>Morgan</u>, the plaintiff expressly limited the amount in controversy to an amount lower than the jurisdictional requirement, stating in the complaint that "the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value." <u>Id.</u>

---

[4] CAFA also requires a minimum of 100 persons for a diversity class action. 28 U.S.C. § 1332(d)(5)(B).

13

The claims in <u>Samuel-Bassett</u>, <u>Red Cab</u> and <u>McNutt</u> did not involve such a limitation. The different circumstances in <u>Morgan</u> called for a different approach to determine whether there was federal jurisdiction. Against the well-established backdrop that the plaintiff is the master of her own claim and thus "may limit [her] claims to avoid federal subject matter jurisdiction,"[5] the panel concluded that where the plaintiff so limits her claim, "[t]he party wishing to establish subject matter jurisdiction has the burden to prove to a legal certainty that the amount in controversy exceeds the statutory threshold." <u>Id.</u> at 474. This "legal certainty" standard differs from that of the cases cited by <u>Samuel-Bassett</u>. In those cases, the <u>challenger</u> to subject matter jurisdiction had to prove, to a legal certainty, that the amount in controversy <u>could not exceed</u> the statutory threshold.[6] <u>See</u> <u>Packard</u>, 994

---

[5] "CAFA does not change the proposition that the plaintiff is the master of her own claim." <u>Morgan</u>, 471 F.3d at 474.

[6] The panel noted as an aside in <u>Samuel-Bassett</u> that:

We recognize that requiring a defendant to show to a legal certainty that the amount in controversy exceeds the statutory minimum may lead to some bizarre situations. As the Court observed in <u>Shaw v. Dow Brands, Inc.</u>, 994 F.2d 364, 366 (7th Cir. 1993), oral argument presented a "comic scene: plaintiff's personal injury lawyer protests up and down that his client's injuries are as minor and

14

F.2d at 1046; <u>Meritcare</u>, 166 F.3d at 217; <u>Bloom</u>, 755 F.2d at 358; <u>Nelson</u>, 451 F.2d at 293.

In <u>Morgan</u>, by contrast, we held that where the plaintiff expressly limits her claim below the jurisdictional amount as a precise statement in the complaint, applying the maxim that the plaintiff is the master of her own complaint, the <u>proponent</u> of the federal subject matter jurisdiction is held to a higher burden; that is, the proponent of jurisdiction must show, to a legal certainty, that the amount in controversy <u>exceeds</u> the statutory threshold.

B.

---

insignificant as can be, while attorneys for the manufacturer paint a sob story about how the plaintiff's life has been wrecked." It would not be a surprise that when the time came for assessment of damages the parties would once again switch their views by some 180 degrees.

357 F.3d at 398. We do not read the introductory sentence of the above paragraph as the holding of <u>Samuel-Bassett</u>. Indeed, it argues against placing such a burden on a defendant. Moreover, <u>Shaw</u> did not advocate such a burden on the defendant. To the contrary, it observed: "Defendants seeking removal may meet that burden by a preponderance of evidence . . . which we take to mean proof to a reasonable probability that jurisdiction exists." 994 F.2d at 366 (internal citation omitted).

15

Thus, Morgan does not conflict with the reasoning and holding of Samuel-Bassett. The Samuel-Bassett dichotomy still paves the basic procedural avenue: "In many cases . . . disputes over factual matters may be involved. In resolving those issues, the McNutt preponderance of the evidence standard would be appropriate. Once the findings of fact have been made, the court may determine whether Red Cab's 'legal certainty' test for jurisdiction has been met." 357 F.3d at 398.

Morgan provided a more complete roadmap. First, it added a precept that may be applied to all diversity class actions that have been removed: "Because 'the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy,' '[a] defendant's notice of removal serves the same functions as the complaint would in a suit filed in federal court.'" Morgan, 471 F.3d at 474 (quoting Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005)). Second, Morgan erected guideposts in those cases where the plaintiff's complaint specifically (and not impliedly) and precisely (and not inferentially) states that the amount sought in a class action diversity complaint "for the class as a whole shall not exceed $5 million in sum or value." Id. at 471. In such cases "[t]he party wishing to establish subject matter jurisdiction has the burden to prove by a legal certainty that the amount in controversy exceeds the statutory threshold." Id.[7]

---

[7] In evaluating the precedential reach of Morgan, we look at the "detailed set of facts" that undergird the rule of law emerging therefrom. Here we start with a definition of

The distinction between a case governed by <u>Morgan</u> and a case governed by <u>Red Cab</u> and <u>Samuel-Bassett</u> is crystal clear. <u>Morgan</u> applies where the complaint specifically avers that the amount sought is less than the jurisdictional minimum. There, a defendant seeking removal must prove to a legal certainty that plaintiff <u>can</u> recover the jurisdictional

precedent:

> A judicial precedent attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar facts and arising on the same court or a lower court in the judicial hierarchy.

<u>Allegheny County Gen. Hosp. v. NLRB</u>, 608 F.2d 965, 969-970 (3d Cir. 1979) (footnote omitted); <u>see also</u> Roscoe Pound, <u>Hierarchy of Sources and Forms in Different Systems of Law</u>, 7 TUL. L. REV. 475, 482 (1933).

In <u>Morgan</u>, the adjudicative facts were that the plaintiff's complaint deliberately limited recovery for class action damages to not exceed $5 million. Thus, the holding of <u>Morgan</u> that "[t]he party wishing to establish subject matter jurisdiction has the burden to prove by a legal certainty that the amount in controversy exceeds the statutory threshold," 471 F.3d at 471, is a viable precedent to only those diversity class action removal cases where the original complaint contains such a limitation.

17

amount. By contrast, <u>Samuel-Bassett</u> applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum. There, the case must be remanded if it appears to a legal certainty that the plaintiff <u>cannot</u> recover the jurisdictional amount.

Against this framework, we turn to the case before us.

IV.

"In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." <u>Samuel-Bassett</u>, 357 F.3d at 398. Here, Frederico does not state an exact sum sought in her complaint. Instead, her complaint "seeks, <u>inter alia</u>, damages and compensation to all class members from the Defendant, interest, punitive damages, costs of suit, treble damages and attorneys' fees as permitted under the Consumer Fraud Act, and any other damages deemed just and proper by the Court." Compl. ¶ 1. The class size alleged is "thousands, if not . . . tens of hundreds of thousands, of individuals." <u>Id.</u> ¶ 19. Frederico herself paid $287.14 for her use of the rental vehicle. <u>Id.</u> Exhibit B.

In addition, to determine whether the minimum jurisdictional amount has been met in a diversity case removed to a district court, a defendant's notice of removal serves the same function as the complaint would if filed in the

18

district court. <u>Morgan</u>, 471 F.3d at 474. Thus, we examine Home Depot's contentions set forth therein:

> Assuming that Plaintiff's payment of $287.14 represents the average actual damages of each member of the putative class and the maximum punitive damages allowable under New Jersey law were awarded (<u>see</u> N.J. Stat. § 2:A:15-5.14(b)), Plaintiff need only prevail on behalf of 2,903 class members for the class recovery to exceed $5,000,000. Given that Plaintiff has alleged a putative class consisting of "thousands" if not "tens of hundreds of thousands" of members, it is more likely than not that $5,000,000 or more is in controversy in this case. <u>See</u> Compl., ¶¶ 17, 19. <u>See</u> <u>Penn v. Wal-Mart Stores, Inc.</u>, 116 F. Supp. 2d 557, 562 (D.N.J. 2000) ("In the absence of Third Circuit precedent on the issue of what the defendant needs to show to satisfy the amount in controversy requirement when the plaintiff alleges unspecified damages, the Court will adopt the preponderance of the evidence standard.").
>
> Moreover, Plaintiff also seeks attorneys' fees, which can exceed six figures in a class action and are properly aggregated and considered for purposes of determining the amount in controversy under CAFA. <u>See</u> 28 U.S.C. §

19

> 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."); <u>see also</u> <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 585 (3d Cir. 1997) ("Moreover, in calculating the amount in controversy, we must consider potential attorneys' fees.").

Home Depot, Notice of Removal ¶¶ 20, 21 (filed Nov. 28, 2005).

In response to this Court's letter requesting that the parties "address whether the allegations in the complaint and notice of removal that 'the matter in controversy exceeds the sum or value of $5 million dollars, exclusive of interest and costs,'" vested the District Court with jurisdiction, both parties filed replies. Letter from Marcia M. Waldron, Clerk for the United States Court of Appeals for the Third Circuit, to Counsel for Janelle Frederico and Home Depot (June 26, 2007).

In its reply, Home Depot essentially restates the averments set forth in Paragraphs 20 and 21 of its Notice of Removal. Frederico's reply states, in relevant part:

> Although [Home Depot's] letter [to the Court in response to the Court's query as to jurisdiction] quotes Appellant/Plaintiff's complaint that "<u>the</u>

20

> matter in controversy exceeds the sum or value of $5 million dollars, exclusive of interests and costs," it should be noted that the complaint does not contain such a quote, does not contain any mention of the sum or value of the matter in controversy, nor, for that matter, does Appellant's complaint assert federal jurisdiction at all.
>
> This suit was initially brought in state court – specifically, New Jersey Superior Court, Middlesex County. Thereafter, Respondent asserted diversity and CAFA jurisdiction, and removed the case from state court to federal court. As such, Appellant leaves it to the Respondent to explain Respondent's basis for asserting jurisdiction.

Letter from William O. Crutchlow, Counsel for Appellant Janelle Frederico, to the Office of the Clerk, United States Court of Appeals for the Third Circuit (July 3, 2007) (emphasis in original).

In Morgan, the plaintiff expressly limited, in her complaint, the damages sought to less than the jurisdictional threshold. 471 F.3d at 471. Here, by contrast, Frederico does not explicitly limit the amount in controversy to $5 million or less. Therefore, the case falls under the framework established by Samuel-Bassett.

21

Frederico's response to the Court's query regarding jurisdiction supplies us with no useful information with which to calculate the amount in controversy. She is playing her cards close to the vest: Her answer neither agrees with the facts alleged in the removal notice nor contests them. Nonetheless, Home Depot's argument for jurisdiction is based on allegations made initially by Frederico herself. Accordingly, the present posture of the case is one where the relevant facts are not expressly in dispute between the parties. Even where allegations are not challenged by the adversary, "the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence." McNutt, 298 U.S. at 189.

We do not believe such an insistence is necessary in this case. The District Court accepted and relied on the facts alleged in Home Depot's Notice of Removal when it concluded that it had diversity jurisdiction. App. at 120 n.3. Furthermore, neither party contests the underlying facts and both instead rely upon them. Cf. McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290 (3d Cir. 2006) ("If a defendant does not challenge the [jurisdictional] facts alleged in the plaintiff's pleadings, a court may rule on the [Rule 12(b)(1)] motion by accepting these allegations as true."). We will therefore apply Red Cab's legal certainty test to the facts alleged by Frederico in her complaint and incorporated by Home Depot into its Notice of Removal.

Here Frederico is seeking $287.14 in compensatory damages.[8] In addition, she is seeking punitive damages, which we must consider when calculating the amount in controversy. Golden v. Golden, 382 F.3d 348, 356 (3d Cir. 2004). Under New Jersey law, Frederico can collect punitive damages of up to five times the compensatory damages. N.J.S.A. § 2A:15-5.14(b). Thus, she can collect $1,435.70 in punitive damages. Combined with compensatory damages, the punitive damages bring Frederico's total damages to $1,722.84.

_____

[8] Our calculations are based on compensatory damages of $287.14. That amount represents the total paid by Frederico, including the typical rental rate, late fees, 6% sales tax, and the domestic security charge of $2.00. As we do not know when Frederico first attempted to return the vehicle, we do not know what amount of $287.14 represents the amount she objects to. Assuming that she returned the vehicle at the closing time listed on the Agreement (10 PM), her accepted costs would have been $32.74 (including applicable sales tax and the domestic security charge). As a result, she would seek compensatory damages of $254.40, punitive damages of $1,272.00, and attorneys fees of $457.92, bringing her total damages to $1,984.32. Even under this damage calculation, the class size, in order to meet the amount in controversy requirement, need only be 2,520 individuals, a number significantly within the "tens of hundreds of thousands" alleged by Frederico and recounted by Home Depot.

We must also consider attorney's fees. <u>See</u> <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578, 585 (3d Cir. 1997). Fees could be as much as thirty percent of the judgment. <u>See</u> <u>In re Rite Aid Corp. Securities Litigation</u>, 396 F.3d 294, 303 (3d Cir. 2005) (noting study done by the Federal Judicial Center that found a median percentage recovery range of 27-30% for all class actions resolved or settled over a four-year period). Thirty percent of a $1,722.84 judgment is $516.85, bringing Frederico's total damages to $2,239.69.

Finally, $5 million, the jurisdictional threshold, divided by the total amount of damages sought for Frederico herself, $2,239.69, produces a requisite class size of 2,233 individuals. <u>See</u> 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds . . . $5,000,000 . . . ."). This class size necessary to meet the requisite amount in controversy is well under the "tens of hundreds of thousands" of class members that appears in both Frederico's complaint and Home Depot's Notice of Removal.

Thus, we are satisfied that the <u>Red Cab</u> legal certainty test is met: as it does not appear to a <u>legal certainty</u> that Frederico cannot recover the jurisdictional amount, the case need not be remanded and we may proceed to the substantive merits of this appeal.

V.

24

In her complaint, Frederico alleged that Home Depot violated the NJCFA, committed common law fraud, and breached its contract with her. She contends that the District Court erred in granting Home Depot's motion to dismiss under Rules 12(b)(6) and 9(b), Fed. R. Civ. P.

Our review of the District Court's order is plenary. Santiago v. GMAC Mortgage Group, Inc., 417 F.3d 384, 386 (3d Cir. 2005). Pursuant to Rule 12(b)(6), a court may dismiss a complaint that fails "to state a claim upon which relief can be granted." We accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. Santiago, 417 F.3d at 386; Hayes v. Gross, 982 F.2d 104, 105-106 (3d Cir. 1992).

We conclude that Frederico failed to state a claim upon which relief may be granted.

A.

We turn first to Frederico's contentions that Home Depot committed common law fraud and violated the NJCFA by materially misrepresenting or omitting in the Agreement (1) the "terms, conditions, and 'late' fees associated with the return of rental vehicles," (2) "that the 'late' fees were not grossly excessive," and (3) "that its vehicle rental return procedures were intended to enable Home Depot to illegally profit" by causing delay in the return of rental vehicles. Compl. ¶¶ 37, 42, 40.

25

1.

To state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367-368 (N.J. 1997).

The stringent pleading restrictions of Rule 9(b), Fed. R. Civ. P., apply to such a claim: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. See id. at 224.

We agree with the District Court that Frederico's fraud claim does not meet the stringent pleading requirements of Rule 9(b). Frederico does not state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations. In her complaint, she

26

only makes generic references to Home Depot's "excessive 'late' rental fees,"[9] Compl. ¶ 37, failure to disclose lack of after-hours rental return facilities or procedures, id. ¶ 39, and false representation that "vehicle rentals and late fees associated therewith would not accumulate beyond the time at which Plaintiff and class members returned or attempted to return rented vehicles to Home Depot," id. ¶ 41. None of these broad statements disclose the particular argument made on appeal as to the substance of the misrepresentation,

---

[9] A plain reading of this allegation would suggest that the rates themselves, as charged and found in the Agreement, were excessive. See App. at 126 ("With respect to the fees charged, Defendant clearly represented in the Agreement that the rental rate for the truck was $19.00 for the first seventy-five minutes and $5.00 for each additional fifteen minutes that Plaintiff retained possession of the truck. The receipt for the truck rental that Plaintiff attached to her complaint shows that this is exactly the rate that Plaintiff was charged for the thirteen hours and forty-four minutes that she retained possession of the truck. Thus, Plaintiff's protestations that such fees were 'excessive' are baseless.") (opinion of the District Court). Frederico, however, does not appear to be making this argument. Frederico's brief on appeal reveals her argument to be that such fees were excessive because of the undisclosed gap between the time the rental department closes (a time not disclosed in the Agreement) and the time the store closes (a time disclosed in the Agreement). Without such detail appearing in the complaint, however, Home Depot was not placed "on notice of the precise misconduct with which [it is] charged." Lum, 361 F.3d at 223-224.

27

namely, that Home Depot misrepresented "the actual hours during which vehicles could be returned so as to avoid or halt the accumulation of late fees."[10] Appellant's Br. at 21-22.

Frederico did not provide such information in her complaint and thus did not meet her obligation to put Home Depot "on notice of the precise misconduct with which [it is] charged." Lum, 361 F.3d at 223-224. As the District Court observed, Frederico "fail[ed] to allege that any particular statement made by Defendant in the Agreement was in fact false," app. at 126, and:

> fail[ed] to allege when she attempted to return the truck to Home Depot and whether this attempted return was prior to the time it was due at 7:38 pm or even before the store closed at 10:00 pm. Further, Plaintiff does not allege who at Home Depot informed her that she could not return the vehicle at that unspecified time and that she should return the following morning.

---

[10] That is, Frederico is arguing that the Agreement stated closing was at 10 PM, see App. at 78 ("VEHICLE MUST BE RETURNED TO THE STORE BEFORE CLOSING ON THE DAY OF RENTAL."), and seemed to therefore suggest vehicles could be returned up until then. However, the rental department in fact closed earlier (not disclosed in the Agreement) and thus any attempt to return the vehicle before closing but after the rental department closed resulted in the unexpected overnight accumulation of late fees.

28

See e.g., Klein v. General Nutrition Co., Inc., 186 F.3d 338, 345 (3d Cir. 1999) ("The complainant fails to attribute the statement to any specific member of GNC management. Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements."); Granite State Ins. Co. v. UJEX, Inc., Civ. No. 03-1220, 2005 WL 1618792, at *8 (D.N.J. July 11, 2005) (dismissing fraud claim under Rule 9(b) where complaint was utterly devoid of the averments required by Rule 9(b), including the identity of the alleged speaker).

Id. at 128.

We are mindful of Frederico's observation that without the benefit of discovery she could not learn the name of the employee with whom she interacted when attempting to return the truck. Appellant's Br. at 33 n.2. Nevertheless, her complaint only refers generally to being "informed by Defendant," Compl. ¶ 8, and does not disclose the circumstances surrounding her discussion with, or any information about, the particular individual who informed her that the rental department was closed.[11] Furthermore, although

---

[11] The District Court noted that information as to the identity of the person who told Frederico to return the truck the next day "does not appear to be in the exclusive control of the Defendant, and Plaintiff does not make such an allegation. See

29

Frederico has subsequently stated in her briefs that her initial attempt to return the truck occurred prior to 10:00 PM, see, e.g., Appellant's br. at 15 ("[A]lthough the Appellant returned the vehicle to the store before 10 PM, Home Depot refused to accept the return."); Plaintiff's Memorandum in Law in Opposition to the Defendant's Motion to Dismiss, Frederico v. Home Depot, 2:05-cv-00579JAP, at 2 (January 3, 2006) (same), we do not consider after-the-fact allegations in determining the sufficiency of her complaint under Rules 9(b) and 12(b)(6). See Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (quoting Car Carriers, Inc. v. Ford Motor Corp., 745 F.2d 1101, 1107 (7th Cir. 1984)); Unger v. National Residents Matching Program, 928 F.2d 1392, 1400 (3d Cir. 1991).

For the foregoing reasons, Frederico's common law fraud claim was properly dismissed.

2.

---

F.D.I.C. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994) (stating that where a plaintiff cannot be expected to have personal knowledge of certain details of the alleged fraud, to satisfy Rule 9(b), the plaintiff must allege that the necessary information lies within defendant's exclusive control and provide facts to illustrate that plaintiff's claims are not baseless)." App. at 10 n.5.

To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff. <u>Cox v. Sears Roebuck & Co.</u>, 647 A.2d 454, 462-465 (N.J. 1994). The District Court found that Frederico failed to state such a claim. We agree.

a.

Frederico fails to allege Home Depot engaged in an unlawful practice. The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2. "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." <u>Cox</u>, 647 A.2d at 462.

The "unlawful practice" engaged in by Home Depot, alleged by Frederico, is the "instituti[on] and implement[ation of] business processes intended to delay the return of rental vehicles so as to enable Home Depot to profit from charging

31

Plaintiff and similarly situated consumers excessive 'late' rental return fees." Compl. ¶ 28.

Frederico does not contend that Home Depot charged her late fees at a rate higher than that agreed upon and disclosed in the Agreement. Instead, as discussed above, her argument on appeal is that, "[u]nder the express terms of the Rental Agreement, the Appellant was required to return the vehicle to the Home Depot store before that store closed," the store hours were listed, showing that the store was open until 10 PM, and although she attempted to return the vehicle before 10 PM, she learned that the "rental department closes hours before the time listed on [the] Agreement." Appellant's Br. at 14, 15. From this sequence of events, Frederico argues that by refusing to accept the vehicle before the closing time listed on the Agreement, and instead instituting an "undisclosed condition" that vehicles must be returned before the rental department closes, "Home Depot deliberately made it impossible for consumers such as Ms. Frederico to return the rental vehicles pursuant to the terms of the Rental Agreement," resulting in unexpected late fees, and that such a practice "clearly falls within the deceptive, fraudulent, and unconscionable commercial practices prohibited by the [NJ]CFA." Id. at 15, 16.

Frederico's complaint, however, does not provide such detail. As the District Court observed:

> [In her complaint, ]Plaintiff does not state when she attempted to return the truck to Home Depot

32

and <u>who</u> told her that she could not return the vehicle at that time. <u>See, e. g.</u>, <u>F.D.I.C. v. Bathgate</u>, 27 F.3d 850, 876 (3d Cir. 1994) (dismissing plaintiff's NJCFA and common law fraud claims under Rule 9(b) where plaintiff failed to identify the speaker of the allegedly misleading statements and otherwise allege facts to support plaintiff's charges). Based on plaintiff's [sic] bare allegations, the Court cannot conclude that Defendant engaged in any unlawful practice.

App. at 130 (emphasis in original); <u>see also</u> <u>Klein</u>, 186 F.3d at 345 ("The complaint fails to attribute the statement to any specific member of . . . management. Fed. R. Civ. P. 9(b) requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements.").

Frederico merely asserts in her complaint that Home Depot "violated the [NJ]CFA by its use of false and misleading representations in connection with the terms, conditions, and 'late' fees associated with the return of rental vehicles." Compl. ¶ 33. Without information as to <u>when</u> Frederico attempted to return the vehicle, whether before the closing listed on the Agreement (10 PM) or after, the grounds for and contours of the alleged unlawful practice are unclear. As with the common law fraud claim discussed above, Home Depot is not placed on notice that the particular practice complained of is nondisclosure of the fact that there is a gap between the closing time of the store (as listed in the

33

Agreement) and the closing time of the rental department, and that late fees accrue if a customer attempts to return the vehicle between those two times.

Frederico therefore failed to sufficiently allege an unlawful practice with requisite specificity.

b.

In addition, Frederico failed to show that Home Depot's alleged unlawful practice caused her loss. We agree with the District Court that:

> Without knowing when Plaintiff attempted to return the truck to Home Depot, it is impossible to determine whether it was Home Depot's conduct, or Plaintiff's own conduct in not returning the truck on time, that caused her to retain the truck overnight and incur rental charge[s] for the night of August 6, 2005. . . . See Cannon v. Cherry Hill Toyota, Inc., 161 F. Supp. 2d 362, 374-75 (D.N.J. 2001) ("New Jersey courts have interpreted the NJCFA as requiring a causal link between the practice and the harm."); New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003) (dismissing NJCFA claim for failure to state a claim where plaintiffs failed to demonstrate that any losses they may have suffered were caused by defendants).

34

App. at 130. That is, had she attempted to return the vehicle after the store's listed closing (10 PM), Home Depot's "unlawful conduct" of not disclosing that the rental department closed earlier would not have <u>caused</u> her to incur the late fees.

The District Court's dismissal of Frederico's NJCFA claim, therefore, was proper.

B.

Finally, we turn to Frederico's breach of contract claim. To state a claim for breach of contract, she must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. <u>See</u> <u>Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.</u>, 210 F. Supp. 2d 552, 561 (D.N.J. 2002).

In her complaint, Frederico claims that Home Depot "breached its standard Vehicle Delivery Agreement with Plaintiff and members of the class. Plaintiff and members of the class suffered an ascertainable loss as a result of Defendant's breach of contract." Compl. ¶ 46. Frederico alleges that the Home Depot breached the Agreement for the truck rental by refusing to allow her to return the truck on August 6, 2005. She claims that an unspecified person at the Home Depot store informed her that the rental department was closed and that the store had no after-hours facilities, and

35

that accordingly she has to wait until the next morning and pay $287.14 instead of $19.00.

We are satisfied with the District Court's dismissal of Frederico's contract claim. Both parties agree that the first element, the existence of a contract, is met by the Agreement. As the District Court found, however, Frederico failed to "provide allegations to support the second, third, and fourth elements of the breach of contract claim":

> Plaintiff failed to allege the time on August 6, 2005 that she attempted to return the truck. This deficiency makes it impossible to determine whether the defendant breached any promises made in the Agreement or whether plaintiff breached her own contractual obligation to return the vehicle by 7:38 p.m. and in any event, before the store closed at 10:00 p.m.

App. at 125.

With respect to the second and third elements, then, Frederico's complaint does not disclose how Home Depot breached the Agreement: she was charged the agreed upon amount for the time the vehicle was in her possession. Without knowing when Frederico first attempted to return the vehicle, it is unclear whether Defendant's refusal to accept the first return was in breach of the Agreement. Because it cannot be determined that Home Depot breached the agreement, it

36

cannot be inferred that Frederico's damages "flowed" from the breach.

With respect to the fourth element, that the party alleging the breach performed its contract obligations, Frederico argues on appeal:

> [A]ll that the Rental Agreement required of consume[r]s such as Ms. Frederico in order to avoid or halt the accumulation of late fees was to satisfy the following conditions: (1) return the vehicle (2) to the store (3) before the store's closing. Appellant satisfied all those conditions – she returned the vehicle, to the store from which she had rented that vehicle, and did so before that store had closed. As such, the Appellant fulfilled the express terms of the Rental Agreement.

Appellant's Br. at 5-6.

Frederico, however, did not plead in her complaint that she returned the vehicle at the time specified in the Agreement (7:38 PM) or even before the store's closing (10 PM). Her complaint only states "Plaintiff returned the truck to Home Depot on August 6, 2005, but was informed by Defendant that the rental department was closed." Compl. ¶ 8. Contrary to Frederico's brief, the District Court was not requiring her to specify "the exact hour at which [she] attempted the rental return." Appellant's Br. at 33. Instead,

37

she must simply plead that the time of the attempted return was made in accordance with the Agreement, and thus that she satisfied her own contractual obligations. This she did not do, and therefore the District Court's dismissal of Frederico's contract claim was proper.

* * * * *

For the foregoing reasons, the judgment of the District Court will be affirmed.