**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2862
_____

COLDWELL BANKER REAL ESTATE LLC

v.

BELLMARC GROUP LLC; AC LAWRENCE REAL ESTATE LLC; BELLMARC
BROKERAGE MIDTOWN; INC; BELLMARC DOWNTOWN LLC; BELLMARC
EAST LLC; BELLMARC WEST LLC; BELLMARC; SIMONE SONG INC;
BELLMARC GRAMERCY CHELSEA INC; NEIL BINDER; NICE IDEA LLC

NEIL BINDER,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil No. 2:14-cv-07926)
District Judge:  Honorable Madeline C. Arleo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 21, 2022

Before: KRAUSE, BIBAS and SCIRICA, <u>Circuit Judges</u>

(Opinion filed August 24, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Neil Binder appeals pro se from the District Court's judgment, which followed a bench trial and awarded damages to Coldwell Banker Real Estate Services LLC ("Coldwell Banker") on claims brought against Binder and others. For the following reasons, we will affirm the District Court's judgment.

I.

Because we write primarily for the parties, we recite only the facts necessary for our discussion; these facts are undisputed unless otherwise noted.[1] Appellee Coldwell Banker is a franchisor in the real estate brokerage business. In early 2013, Coldwell Banker entered into a real estate franchise agreement with a group of entities ("Franchisees") where Binder was a principal; the initial agreement was amended by a series of addendums over the course of that year ("Franchise Agreements"). Binder executed a guarantee of payment and performance to Coldwell Banker for the Franchisees.

The Franchise Agreements required the Franchisees to pay royalty fees as well as marketing fees. The marketing fees were to be paid into a Brand Marketing Fund ("BMF") to promote the Coldwell Banker brand nationwide. The Franchise Agreements

---

[1]  To the extent that Binder does not discuss certain facts in his opening brief, we consider them to be undisputed. Also, we do not reach allegations or arguments that Binder raises "for the first time in [his] reply brief." See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017).

stated that the Franchisees were required to pay both royalty fees and BMF contributions regardless of whether any amount was due to the Franchisees from Coldwell Banker.

The Franchise Agreements also provided for distributions of a forgivable loan, referred to as conversion funding, which was offered to certain new franchisees. The loan was forgivable only if the Franchisees met certain revenue thresholds and complied with the Franchise Agreements; otherwise, the loan had to be paid back to Coldwell Banker. Details about conversion funding distributions were included in promissory notes, which were executed by Binder on behalf of the Franchisees.

Coldwell Banker paid the Franchisees $1,250,000 in conversion funding in June 2013. On January 6, 2014, Coldwell Banker released $187,500 in conversion funding to the Franchisees. Then on January 8, 2014, the Franchisees stopped paying royalty fees and BMF contributions to Coldwell Banker.

Binder withheld these contributions because he wanted an offset from Coldwell Banker against the next anticipated round of conversion funds, to reimburse the Franchisees for advertising costs that he believed Coldwell Banker owed. Because payments from the Franchisees ceased, Coldwell Banker declared the Franchisees delinquent in January 2014. Coldwell Banker met and communicated with the Franchisees about their outstanding balance over the coming months, and in July 2014, it issued a notice of non-compliance, asserting that the Franchisees had defaulted on their obligations. In December 2014, Coldwell Banker terminated the Franchise Agreements.

Coldwell Banker then filed an action in the District Court against Binder, the

3

Franchisees, and the Franchisees' corporate guarantors.  It brought a number of state and federal claims, including breach of contract claims.  Defendants filed an answer that included two breach of contract counterclaims, as well as three other counterclaims.  After discovery, Coldwell Banker moved for summary judgment.  The District Court granted summary judgment for Coldwell Banker on three counterclaims, including one of defendants' breach of contract counterclaims.  A fraudulent inducement counterclaim that survived summary judgment was dismissed before trial.  Defendants' remaining breach of contract counterclaim and Coldwell Banker's claims proceeded to a bench trial.

After a two-day trial in May 2021, the District Court issued a bench opinion.  The District Court concluded that Coldwell Banker had proved its breach of contract claims and denied defendants' remaining counterclaim.  Binder appeals.[2]

## II.

We have jurisdiction under 28 U.S.C. § 1291.  "After a bench trial, . . . we review the District Court's factual findings, and mixed questions of law and fact, for clear error,

_____

[2]  Several other defendants were initially parties to this appeal, but after the attorney representing them withdrew, all but Binder were dismissed.  See Simbraw v. United States, 367 F.2d 373, 373-74 (3d Cir. 1966) (per curiam) (providing that a corporation may appear in federal court only through licensed counsel); Lazaridis v. Wehmer, 591 F.3d 666, 672 (3d Cir. 2010) (per curiam) (explaining that an individual proceeding pro se may not represent third parties in federal court).  In light of that dismissal, Coldwell Banker argues that Binder lacks the ability under state law governing corporate entities and LLCs to pursue the arguments he has raised in this appeal, as an individual.  However, the District Court's judgment was entered against all defendants, including Binder.  We are satisfied that Binder has Article III standing.  See Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 258 (3d Cir. 2009) (discussing the elements of Article III standing).

and we review the Court's legal conclusions *de novo*." Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J., 853 F.3d 671, 682-83 (3d Cir. 2017).

III.

Binder challenges the District Court's rulings on the parties' breach of contract claims.[3] Binder fundamentally argues that Coldwell Banker should have lost on its breach of contract claims, and he should have succeeded on his two breach of contract counterclaims, because Coldwell Banker breached the Franchise Agreements first. See Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) ("To state a claim for breach of contract [under New Jersey law, a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.").[4] The District Court concluded that, as relevant here, Coldwell Banker did not breach any provision of the Franchise Agreements, while the Franchisees breached the Franchise Agreements by failing to pay royalty fees and BMF contributions after January 8, 2014.

Binder argues that Coldwell Banker should not have succeeded in its breach of contract claims based on two factual arguments. First, he claims that Coldwell Banker

---

[3] Other than challenging an evidentiary ruling at trial, Binder addresses only the breach of contract claims and related counterclaims in his opening brief. By failing to raise any issues relating to the other claims and counterclaims, Binder has forfeited any challenge to the resolution of those claims. See United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005).

[4] The parties do not dispute that New Jersey law applies to their state law claims.

falsified an audit in 2013 "to give the appearance that" the Franchisees were violating the Franchise Agreements. See Appellant's Br. at 22. However, as Binder acknowledges, the balance in dispute was reconciled by January 6, 2014, when Coldwell Banker issued a round of conversion funding to the Franchisees. Binder does not explain how this allegedly false audit factored into the Franchisees' decision to stop paying royalty fees and BMF contributions to Coldwell Banker on January 8, which was the basis of Coldwell Banker's breach of contract claims.

Second, Binder argues that Coldwell Banker was required to make an additional payment of conversion funds when the Franchisees met a certain financial threshold "in mid-January 2014." See id. at 25. However, Binder does not dispute that the Franchisees stopped paying royalties and BMF contributions to Coldwell Banker, as required by the Franchise Agreements, on January 8, 2014. As the District Court appropriately concluded, the Franchise Agreements plainly stated that a failure to pay royalties or BMF contributions constituted a default of the Franchise Agreements, and that the Franchisees were not entitled to conversion funding if they were in default of the Franchise Agreements. Thus, based on Binder's arguments, we see no reason to disturb the District Court's conclusion that Coldwell Banker established its breach of contract claims.

Binder next argues that Coldwell Banker breached the Franchise Agreements by failing to provide sufficient software for the Franchisees' rental listings. Although Binder insists that Coldwell Banker was required to modify its rental software to accommodate the Franchisees, the Franchise Agreements stated only that the applications

6

provided by Coldwell Banker were licensed and distributed "as is" and that Coldwell Banker would aim to provide support for its issued applications. Accordingly, the District Court did not err in concluding that Coldwell Banker was not required by the Franchise Agreements to adjust its rental software for its franchisees. Binder thus could not establish a breach of contract counterclaim on this basis.

Binder also maintains that Coldwell Banker breached the Franchise Agreements by failing to reimburse the Franchisees for their advertising expenses. It is undisputed that Coldwell Banker agreed to use a certain amount of BMF contributions from the Franchisees to promote the Coldwell Banker brand in Manhattan, where the Franchisees were operating. However, Binder contends that Coldwell Banker was also required to *reimburse* the Franchisees for advertising fees in 2013 and to reimburse them out of the BMF for advertising fees in 2014. Although the Franchise Agreements set out that the BMF was meant to be used for marketing the Coldwell Banker brand, no clause provides for reimbursement to franchisees for advertising costs. As Binder recognizes in his opening brief, the record reflects that the parties negotiated — but did not sign or execute — an addendum to the Franchise Agreements that would have provided for reimbursement of certain pre-approved advertising for Coldwell Banker, subject to specific conditions. Accordingly, the District Court also did not err in entering summary judgment for Coldwell Banker on this breach of contract counterclaim.[5]

---

[5] Binder also argues that Coldwell Banker breached the Franchise Agreements by failing to allow the Franchisees an opportunity to participate in a sales and rental program for

7

Finally, Binder challenges an evidentiary ruling at trial. However, we discern no abuse of discretion in the District Court's exclusion of a document that purported to be a summary but repeatedly failed to reference source documents and contained argument and conjecture about the future. See Fed. R. Evid. 1006; see also Eichorn v. AT&T Corp., 484 F.3d 644, 650 (3d Cir. 2007) (concluding that a district court did not err in excluding "calculations [that] went beyond the data they summarized and included several assumptions, inferences, and projections about future events, which represent [an] opinion, rather than the underlying information").

For these reasons, we will affirm the judgment of the District Court.[6]

---

luxury properties, and by misrepresenting the referrals that the Franchisees would receive. Although defendants raised arguments about these issues related to a fraudulent inducement claim in the District Court, Binder makes no arguments about the District Court's ruling on the fraudulent inducement claim in his appellate brief. Defendants' breach of contract counterclaims in the District Court were specifically limited to Coldwell Banker's alleged failure to ensure access to certain rental listing software, provide sufficient marketing materials, and reimburse them for advertising expenses. Binder may not argue that Coldwell Banker breached the Franchise Agreements in these other ways for the first time in this appeal, as "we will not consider on appeal issues which were not presented to the district court." See Royce v. Hahn, 151 F.3d 116, 125 (3d Cir. 1998).

[6] We grant the parties' requests to file supplemental appendices to the extent that they seek to include documents that were part of the record before the District Court. However, we deny their requests to expand the record, for they have not demonstrated that this case presents exceptional circumstances. See Burton v. Teleflex Inc., 707 F.3d 417, 435 (3d Cir. 2013). We note that Coldwell Banker is not entitled to recover costs for any documents included in its supplemental appendix which are duplicative of documents contained in Binder's appendix.