**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2121
_____

DR. GEORGE POLSON,
                    Appellant

v.

VIVIMED LABS INC. USA; VIVIMED LABS LTD
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-20-cv-00914)
District Judge:  Honorable Zahid N. Quraishi
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2024
_____

Before:  SHWARTZ, MATEY, and PHIPPS, *Circuit Judges*.

(Filed: January 26, 2024)
_____

OPINION[*]
_____

PHIPPS, *Circuit Judge*.

   An executive sued his former employer and its parent company for breach of his

employment agreement.  Among other things, he claimed that the companies did not pay

him agreed-upon annual raises and denied him a change-of-control incentive.  Although

the District Court entered summary judgment in the executive's favor on some of his

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

claims, it denied summary judgment on those two claims. In this appeal, the executive challenges those rulings. On *de novo* review, we will affirm the District Court's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In April 2013, Dr. George Polson, a Georgia citizen, entered into an employment agreement with Vivimed Labs Inc. USA, a Delaware corporation with a principal place of business in New Jersey. The employment agreement was for Polson to serve as the company's chief operating officer for a four-year term, through March 2017. One of the terms in the agreement set Polson's initial annual base salary at $200,000 but provided that it would be "incremented yearly as per [Vivimed USA's] policy." Employment Agreement, Annexure I (JA76). Polson was also entitled to bonuses and other benefits. He was to receive a bonus of $400,000 for the total term of employment, paid in annual $100,000 increments, and instead of a 401(k) plan, he would receive $15,000 per year in cash or company stock. In addition, the agreement had a change-of-control incentive clause: if Polson's employment were terminated because Vivimed USA sold its Specialty Chemical Division, then he would receive five percent of the difference between the Division's value on the date of the employment agreement and its sale value.

Polson worked for Vivimed USA for the full four-year term. During his tenure, Polson received his $200,000 salary each year, but he never received a raise, annual bonus, or other pay. Also, after part of the Division was sold in September 2015, Polson, who was not terminated in connection with that acquisition, did not receive any incentive payment.

In January 2020, Polson sued Vivimed USA as well as its parent corporation, Vivimed Labs Limited, which was organized under the laws of India and headquartered in Hyderabad, India. He claimed that the Vivimed entities breached the employment

2

agreement in four respects: by not paying him an annual bonus (Count I); by not giving him annual raises of four percent, which he alleged was company policy (Count II); by not providing him with $15,000 annually in cash or company stock (Count III); and by not paying him pursuant to the change-of-control incentive (Count IV).  In addition to those claims, which were not to a legal certainty less than $75,000, *see Frederico v. Home Depot*, 507 F.3d 188, 195 (3d Cir. 2007), Polson asserted promissory estoppel and unjust enrichment claims in the alternative (Counts V and VI).

In exercising diversity jurisdiction over the case, *see* 28 U.S.C. § 1332(a), the District Court resolved the case based on the parties' cross-motions for summary judgment. It granted summary judgment to Polson on his claims for annual bonuses and for $15,000 annually in cash or company stock.  *See Polson v. Vivimed Labs Inc. USA*, 2023 WL 3689557, at *4–5 (D.N.J. May 26, 2023).  But the District Court rejected Polson's claims for annual four percent raises and for the change-of-control incentive.  *See id*. at *3–6.  It also denied the claims that Polson pleaded in the alternative.  *See id*. at *6.

Through a timely notice of appeal, Polson invoked this Court's appellate jurisdiction to dispute the rejection of his two unsuccessful breach-of-contract claims (Counts II and IV).  *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A).

## DISCUSSION

### A.      The Claim for the Denial of Annual Raises

The Vivimed companies moved for summary judgment against Polson's claims for the denial of an annual raise on a *Celotex* theory.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In *Celotex*, the Supreme Court required a non-moving party at summary judgment to make a showing sufficient to sustain any challenged element of its claim or defense:

> If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial," then summary judgment is appropriate for the moving party.

*SodexoMagic, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Celotex*, 477 U.S. at 322–23) (alterations in original). And in recognizing that the employment agreement provided that Polson's annual salary was to be "incremented yearly as per [Vivimed USA's] policy," Employment Agreement, Annexure I (JA76), the Vivimed companies argued that Polson had not shown that he qualified for an annual raise under Vivimed USA's policy.

The District Court did not err in granting summary judgment on this claim. In his complaint, Polson alleged that Vivimed USA had a policy of giving automatic four-percent raises. But at summary judgment, Polson had no such evidence; the most he could muster was that Vivimed USA may have had an unwritten policy of awarding discretionary, performance-based salary raises to employees annually. And Polson did not produce evidence that his performance would entitle him to any salary increase under a discretionary policy, much less a four-percent annual raise. Under *Celotex*, as applied to his claim, to survive summary judgment, Polson had either to produce evidence of an automatic four-percent annual raise policy or to demonstrate that he could meet the criteria for a discretionary raise under the unwritten policy. Without Polson making either showing, summary judgment was properly entered against him on this claim.

### B.     The Claim for the Denial of the Change-of-Control Incentive

The District Court also correctly rejected Polson's claim for the change-of-control incentive. By its terms, the employment agreement conditions the payment of such an incentive on the termination of Polson's employment:

> In the event of termination of this Agreement due to the acquisition of the Specialty Chemical division of [Vivimed USA], then [Polson] shall also receive 5% of the difference in the value of the division between its value on the date hereof . . . and the value received in the said sale.

Employment Agreement, ¶ 14.6 (JA73).

Polson seeks to rebut that plain language through a sentence in the term sheet for the employment agreement, which was incorporated into the contract. That passage does not reference termination as a condition precedent for the change-of-control incentive:

> In the event of Specialty Chemical Division being acquired . . . during the tenure of this contract, [Polson] will be eligible for special compensation which shall be computed as 5% of the net value of the differential valuation of the division from the date of employment to the date of being acquired.

Employment Agreement, Annexure I (JA77). But that passage was within the section of the term sheet entitled "TERMINATION OF EMPLOYMENT." *Id.* (JA76).

So, there are two interpretive options. That passage of the term sheet could be read in the context of its heading so that no conflict exists between the term sheet and the employment agreement. Or the heading and the context for the passage of the term sheet could be ignored, leading to a conflict between the term sheet and the employment agreement as to whether the termination of Polson's employment was a condition precedent for the change-of-control incentive.

That is not a hard choice. Under New Jersey law, which the parties do not contest as governing law for the employment agreement, a contract must be read "as a whole in a fair and common sense manner." *Hardy ex rel. Dowdell v. Abdul-Martin*, 965 A.2d 1165, 1169 (N.J. 2009) (citation omitted); *see also Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011). It offends that principle to treat the "TERMINATION OF EMPLOYMENT" heading in the term sheet as superfluous and to simultaneously ignore the context for that passage in the term sheet, especially since doing so generates an otherwise avoidable internal inconsistency in the contract. Instead, the

5

more natural interpretation is that the employment agreement and the passage of the term sheet, when read in the context of its heading, both impose termination of employment as a condition precedent for the change-of-control incentive.

Under that reading, because there is no genuine dispute that Polson's termination was not due to the sale of the Specialty Chemical Division, the District Court did not err in concluding that Polson's claim failed as a matter of law. *See* Fed. R. Civ. P. 56(a) (providing that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

\* \* \*

For these reasons, we will affirm the judgment of the District Court.